UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DON KING PRODUCTIONS, INC.,

                            Plaintiff,

- against -

BERNARD HOPKINS, JR., and GOLDEN
BOY PROMOTIONS, INC.,

                          Defendants.

**OPINION AND ORDER**

04 Civ. 9705 (PKL)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/4/05

## APPEARANCES

PETER B. SCHALK, ESQ.
Judd Burstein, P.C.
1790 Broadway
New York, New York 10019
Judd Burstein, Esq.

Attorneys for Plaintiff
Don King Productions, Inc.


KATHERINE L. PRINGLE, ESQ.
Friedman Kaplan Seiler & Adelman LLP
1633 Broadway
New York, New York 10019
Sheila Flynn, Esq.

MICHAEL S. OLIN, ESQ.
Podhurst Orseck, P.A.
25 West Flagler Street, Suite 800
Miami, Florida 33130
Stephen F. Rosenthal, Esq.

Attorneys for Defendant
Bernard Hopkins, Jr.

STEVEN M. HAYES, ESQ.
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, New York 10036
Kimo S. Peluso, Esq.

<u>Attorneys for Defendant</u>
<u>Golden Boy Promotions, Inc.</u>

**LEISURE, District Judge:**

This case arises from a promotional relationship gone sour between two prominent members of the boxing world. Plaintiff, Don King Productions, Inc. ("DKP"), accuses defendant, Bernard Hopkins, Jr., currently the undisputed middleweight champion of the world, of breach of contract, and contends that defendant, Golden Boy Promotions, Inc. ("GBP"), a rival boxing promoter, tortiously interfered with that contract by negotiating its own agreement with Hopkins. DKP also seeks a judgment declaring that the Muhammad Ali Boxing Reform Act (the "Ali Act"), 15 U.S.C. §§ 6301 *et seq.*, does not render its contract with Hopkins unenforceable. Hopkins and GBP now seek to have the complaint dismissed. Hopkins moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), contending that the Court lacks subject matter jurisdiction over DKP's claims and that DKP cannot properly plead a breach of contract claim because the Ali Act nullifies the contract in question. In addition to arguing that subject matter jurisdiction cannot be established, GBP claims that DKP's tortious interference claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because the Court does not have personal jurisdiction over GBP. For the reasons that follow, defendants' motions to dismiss are granted because the Court cannot exercise subject matter jurisdiction over DKP's claims.

## BACKGROUND[1]

In the sport of boxing today, there are three major sanctioning organizations, all of which recognize champions in different weight divisions: the World Boxing Council ("WBC"), the World Boxing Association ("WBA"), and the International Boxing Federation ("IBF"). (See First Amended Complaint ("Compl.") ¶ 15.) Therefore, it is possible for there to be three world

---

[1] The Court will draw all pertinent facts from DKP's First Amended Complaint, which was filed as of right with DKP's opposition papers to the instant motion.

3

champions in each weight division. (Id.) Each of the three sanctioning organizations requires its champion to defend his title by fighting an opponent, known as the "mandatory challenger," every nine months. (Id. ¶ 16.) When such a "mandatory defense" becomes due, the promoters of the champion and the challenger attempt to negotiate a deal for the championship bout. (Id.) If no agreement can be reached within a set period of time, the sanctioning organization will order a "purse bid." (Id.) Under a "purse bid," any promoter registered with the sanctioning organization, regardless of whether it has a contractual relationship with either the champion or the challenger, may submit a sealed bid for the right to promote the bout. (Id.) The promoter who submits the highest bid is awarded the championship fight and is required to put it on within a set period of time, with the champion generally receiving 75% of the high bid, and the challenger receiving 25%. (Id.) In return, the promoter receives the right to stage the bout wherever it desires and to keep all of the profits generated by the bout. (Id.) If the champion refuses to participate in the mandatory bout following the purse bid, the organization will strip him of his title. (Id.) If the promoter does not stage the fight in a timely manner, the right to promote the fight is transferred to the promoter with the second highest bid. (Id.)

In January 2001, DKP and Hopkins entered into a promotional agreement (the "Promotional Agreement"), which provided, *inter alia*, that Hopkins would receive certain minimum purses for bouts against opponents designated by DKP. (Id. ¶ 14.) Nine months later, in September 2001, Hopkins became the "unified champion" in the middleweight division, meaning that he was the WBC, WBA, and IBF champion. (Id. ¶ 17.) Accordingly, Hopkins was required to engage in mandatory defenses for each organization. (Id.)

In October 2002, the WBC conducted a purse bid for Hopkins' title defense against the designated mandatory challenger, Morrade Hakkar. (Id. ¶ 19.) DKP won the purse bid with a

4

bid of $1,501,000. (Id.) Hakkar's promoter, AB Stars, submitted the only other bid in the amount of $1,411,000. (Id.) Therefore, pursuant to WBC rules, DKP could stage the Hopkins-Hakkar fight at the site of its choosing, but had to do so by no later than January 2003. (Id.)

In November 2002, DKP informed Hopkins that it would not be able to stage the bout by January 2003. (Id. ¶ 21.) Following this development, Hopkins had the right to demand that the WBC replace DKP with AB Stars as the promoter for the Hakkar bout pursuant to AB Stars' second place bid. (Id. ¶ 22.) Instead, Hopkins decided to enter into a bout agreement with DKP (the "Hakkar Bout Agreement"), which provided that DKP would stage the fight in February, March or April of 2003 for a purse of $705,000 in Hopkins' hometown of Philadelphia. (Id. ¶ 24.) Moreover, DKP agreed to pay Hopkins $305,000 of the total purse upon the execution of the agreement, which is highly unusual in boxing. (Id. ¶ 26.) Hopkins apparently insisted upon this advance payment because he was in need of immediate funds to satisfy a judgment of $610,000 that had recently been rendered against him. (Id.) In addition, the Hakkar Bout Agreement provided that Hopkins would grant DKP four distinct six-month options to promote Hopkins' next four bouts following the Hakkar fight. (Id. ¶ 27.) DKP could exercise each option by giving notice to Hopkins within six months of the preceding bout or within six months of the expiration of the preceding option. (Id.) In the event that DKP exercised one or more of the options, the parties agreed that DKP would pay Hopkins pursuant to the January 2001 Promotional Agreement. (Id. ¶ 28.)

The Hakkar bout took place in March 2003, and DKP did not exercise its first option over the following six months. (Id. ¶ 30.) In August 2003, DKP won a purse bid for Hopkins' mandatory defense of his WBA championship, which was staged in December 2003. (Id.) Again, DKP did not exercise its second option over the following six months. (Id. ¶ 31.) In

September 2004, Hopkins agreed to fight Oscar de la Hoya without consulting with DKP, in contravention of the exclusive options provision of the Hakkar Bout Agreement, which was effective until at least March 2005. (Id. ¶ 32.)

On November 15, 2004, DKP informed both Hopkins and GBP by letter that it was exercising its option rights under the Hakkar Bout Agreement, and advised GBP that a promotional agreement between Hopkins and GBP would constitute tortious interference with DKP's contractual rights. (Id. ¶¶ 34-35.) In response, Arnold Joseph, Esq., counsel to Hopkins, informed DKP that DKP's options had been rendered void by Section 6307 of the Ali Act. (Id. ¶ 36.) Moreover, Mr. Joseph indicated that Hopkins would immediately bring suit against DKP, if DKP contacted GBP or any other entity with whom Hopkins associated. (Id.) Thereafter, despite DKP's notice, Hopkins and GBP entered into an exclusive promotional agreement (the "Golden Boy Agreement"). (Id. ¶ 37.)

As a result, DKP filed the instant suit on December 9, 2004, alleging that: (1) it is entitled to a judgment declaring that the Hakkar Bout Agreement is not rendered unenforceable by Section 6307b(b) of the Ali Act; (2) Hopkins breached the Hakkar Bout Agreement; and (3) GBP tortiously interfered with the Hakkar Bout Agreement. Section 6307b(b) of the Ali Act provides that: "No boxing service provider may require a boxer to grant any future promotional rights as a requirement of competing in a professional boxing match that is a mandatory bout under the rules of a sanctioning organization." 15 U.S.C. § 6307b(b).

Also on December 9, 2004, GBP filed suit against DKP in California state court seeking a judgment declaring that the Hakkar Bout Agreement is invalid and unenforceable and the Golden Boy Agreement is valid and enforceable (the "California action"). That action was

removed to federal court by DKP and was transferred to this Court by motion of DKP. Ultimately, GBP voluntarily dismissed the California action before DKP filed an answer.

Hopkins and GBP now petition the Court to dismiss DKP's complaint. Hopkins argues that the Court lacks subject matter jurisdiction over the action and that DKP has failed to state a claim upon which relief can be granted, while GBP contends that the Court lacks both subject matter jurisdiction over the action and personal jurisdiction over GBP. The Court need only address defendants' subject matter jurisdiction argument because it is dispositive of the instant motion.

## DISCUSSION

### I. Standard of Review for Rule 12(b)(1) Motions to Dismiss

Federal courts may only consider certain types of cases as they are tribunals of limited jurisdiction. Pursuant to its authority under Article III of the Constitution, Congress has granted district courts jurisdiction to hear cases in which there is a federal question as well as cases based upon diversity of citizenship.[2] See Perpetual Secs., Inc. v. Tang, 290 F.3d 132, 136 (2d Cir. 2002) (citing 28 U.S.C. § 1331 (authorizing jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States") and 28 U.S.C. § 1332 (authorizing jurisdiction "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between[, *inter alia*,] citizens of different states")). Thus, it is axiomatic that, "'[i]f subject matter jurisdiction is lacking, the action must be dismissed.'" Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir. 2003) (quoting Lyndonville Sav. Bank & Trust Co. v.

---

[2] DKP alleges only federal question jurisdiction here and does not challenge defendants' argument that diversity may not serve as a basis for jurisdiction because both DKP and Hopkins are considered citizens of Delaware. (See Memorandum of Law In Support Of The Motion Of Defendant Bernard Hopkins, Jr. To Dismiss The Complaint ("Hopkins Mem.") at 4 n.3; Memorandum Of Law In Support Of Motion Of Defendant Golden Boy Promotions, Inc. To Dismiss Complaint ("GBP Mem.") at 12 n.9.)

Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000)). Indeed, parties cannot create subject matter jurisdiction where the Constitution or Congress has not so provided. See Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir. 2001) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)). Moreover, the absence of subject matter jurisdiction is non-waivable and may be raised at any time by a party or by the court *sua sponte*. See Oscar Gruss, 337 F.3d at 193 (citing Lyndonville Sav. Bank, 211 F.3d at 700).

A plaintiff asserting that subject matter jurisdiction exists has the burden of establishing its existence by a preponderance of the evidence. See APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003); Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When considering a motion to dismiss for lack of subject matter jurisdiction, the court must accept the material factual allegations contained in the complaint. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992). Further, the court may consider evidence beyond the pleadings to resolve disputed issues of fact pertaining to its jurisdiction. See Flores v. S. Peru Copper Corp., 343 F.3d 140, 161 n.30 (2d Cir. 2003); Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998). However, in this determination, the court should not draw any inferences favorable to plaintiff. See Atl. Mut. Ins., 290 F.3d at 198 (citing Norton v. Larney, 266 U.S. 511, 515 (1925)). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

## II. The Well-Pleaded Complaint Rule

Given the absence of diversity of citizenship, DKP asserts that the Court has subject matter jurisdiction over this dispute based on the existence of a federal question. As noted above, "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Supreme Court explained in the seminal case of Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908), wherein the Mottleys brought suit against the railroad alleging that recent federal legislation had violated their contractual right to free rail passes, that "a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." Id. at 152. The existence of federal question jurisdiction "must be determined from what necessarily appears in the plaintiff's statement of his own claim . . ., unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." Taylor v. Anderson, 234 U.S. 74, 75-76 (1914). Indeed, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." Gully v. First Nat'l. Bank in Meridian, 299 U.S. 109, 112 (1936). Over the years, this jurisprudence has evolved into the venerable doctrine known as the well-pleaded complaint rule, which stands today as a significant limit on the reach of a district court's federal question jurisdiction.

As the Supreme Court recently reaffirmed in Beneficial Nat'l. Bank v. Anderson, 539 U.S. 1 (2003), federal question jurisdiction lies only if the complaint asserts a federal claim on its face. Id. at 6. "Thus, a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the

9

defendant of a defense he may raise, or that a federal defense the defendant may raise is not sufficient to defeat the claim." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 10 (1983) (citations omitted). While a state law cause of action may arise under the laws of the United States if a well-pleaded complaint establishes that relief under state law "requires resolution of a substantial question of federal law in dispute between the parties," id. at 13, courts must still adhere to the "'long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction,'" City of Rome v. Verizon Communications, Inc., 362 F.3d 168, 175 (2d Cir. 2004) (quoting Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 813 (1986)).[3]

Of the three claims for relief in DKP's complaint, only the first one purports to raise a federal question as it seeks a declaratory judgment concerning the applicability of the Ali Act to the Hakkar Bout Agreement. It is important to note that the Declaratory Judgment Act, 28 U.S.C. § 2201, under which DKP seeks relief, only provides a plaintiff with an additional remedy; it does not confer jurisdiction upon a federal court. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950); see also Franchise Tax Bd., 463 U.S. at 15-16; Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937) ("[T]he operation of the Declaratory Judgment Act is procedural only."). Thus, a declaratory judgment plaintiff must establish the existence of subject matter jurisdiction like any other plaintiff. See Skelly Oil, 339 U.S. at 671-672. "'[I]f, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.'" Franchise Tax

---

[3] The Supreme Court has recognized two exceptions to the well-pleaded complaint rule in the removal context. A state claim may be removed to federal court when Congress expressly provides for it in a federal statute or when a federal statute completely preempts the state law cause of action. See Beneficial Nat'l. Bank, 539 U.S. at 8-9. These exceptions do not apply here and are not argued by the parties.

Bd., 463 U.S. at 16 (quoting 10A Wright, Miller & Kane, Federal Practice and Procedure § 2767, at 744-45 (2d ed. 1983)).

A declaratory judgment action is frequently employed to "'release potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure – or never.'" City of Rome, 362 F.3d at 175 (quoting Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 (9th Cir. 1990)). When used in this manner then, "a complaint seeking a declaratory judgment is to be tested, for purposes of the well-pleaded complaint rule, as if the party whose adverse action the declaratory judgment plaintiff apprehends had initiated a lawsuit against the declaratory judgment plaintiff." Fleet Bank v. Burke, 160 F.3d 883, 886 (2d Cir. 1998) (citing Pub. Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 248 (1952) ("Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.") and 15 Moore, Moore's Federal Practice § 103.44, at 103-67 (3d ed. 1998) ("The nature of the potential coercive action that the defendant might bring against the declaratory judgment plaintiff must be analyzed. The court will ask whether in this hypothetical suit, a federal question would be presented.")).

However, as the Second Circuit has noted recently, a declaratory judgment action may be used as a sword as well as a shield. See City of Rome, 362 F.3d at 175 n.3. Indeed, it may serve as a less severe but effective alternative to injunctive relief. Id. (citations omitted). In those instances, therefore, there is no threatened action by the declaratory judgment defendant, and it is the underlying action of the declaratory judgment plaintiff that must be analyzed for subject matter jurisdiction purposes. Id. (citing, *inter alia*, Lowe v. Ingalls Shipbuilding, 723 F.2d 1173,

11

1179 (5th Cir. 1984), which explained that "what must arise under federal law is the cause of action in issue itself (regardless of to whom it belongs) as distinguished from some defense to it").

### III. DKP's Complaint Does Not Plead or Anticipate a Federal Cause of Action

Defendants contend that subject matter jurisdiction is lacking here because the only federal issue in DKP's complaint, namely, whether the Ali Act renders unenforceable the options provision in the Hakkar Bout Agreement, arises solely as an anticipated defense to DKP's state law claims for breach of contract and tortious interference. (See Hopkins Mem. at 4-8; GBP Mem. at 7-12.) Because the complaint does not assert a federal cause of action on its face, defendants argue that DKP has failed to satisfy the well-pleaded complaint rule. DKP, on the other hand, maintains that subject matter jurisdiction lies because this declaratory judgment action was filed in response to Hopkins' threat to bring suit pursuant to the Ali Act, and the federal nature of Hopkins' potential claim ensures that federal question jurisdiction is proper. (See DKP Mem. at 14-15.)

As noted in Part II, supra, the Court can exercise subject matter jurisdiction in the instant case only if DKP can establish by a preponderance of the evidence that its complaint presents a federal claim on its face. To do this, DKP attempts to show that its declaratory judgment cause of action was precipitated by Hopkins' threat to file a federal lawsuit based upon the Ali Act. The potential federal question raised by Hopkins' anticipated federal action would satisfy the well-pleaded complaint rule and allow the Court to exercise subject matter jurisdiction over DKP's claims. However, because DKP's two remaining causes of action are clearly based in state law, without this proof of a threat of federal litigation, the complaint must be dismissed.

12

DKP's argument that Hopkins threatened to file a federal action claiming a violation of the Ali Act rests upon DKP's interpretation of a letter written by Hopkins' counsel, Mr. Joseph, to John S. Wirt, Esq., in-house counsel for DKP, in November 2004. The letter states in pertinent part:

> The purpose of this letter is to put you, [Judd] Burnstein [sic] [outside counsel for DKP] and DKP on notice of Mr. Hopkins' intentions with respect to your tortuous [sic] conduct.
>
> As you undoubtedly know, th[e] purported options are rendered void by among other things 15 U.S.C.A. Section 6307. Additionally, DKP, by virtue of the prior statements and inactivity of its principal, has forfeited its rights (to the extent that it had any) to exercise those options.
>
> In light of the fact that you are clearly aware of your inability to proceed with respect to those options, one can only assume that your letter [advising GBP of DKP's contractual rights with respect to Hopkins] was a deliberate and malicious attempt to harm Mr. Hopkins by causing GBP to avoid entering into an agreement with him. Be advised that this intentional interference with Mr. Hopkins' right to earn a living will not be tolerated. You are hereby placed on notice that if you contact either GBP or any other entity with whom Mr. Hopkins may associate, and make similar threats Mr. Hopkins will immediately bring suit against you.
>
> I suggest that if you are convinced of the strength of your position with respect to these "options" you immediately institute suit against Mr. Hopkins to enforce your rights. Unless and until you do so, I once again caution you to stop your unwarranted activities.

(Affidavit of Peter B. Schalk, Esq. In Opposition to Defendants' Motion To Dismiss ("Schalk Aff.") Ex. P.)

DKP argues that this letter constitutes a threat by Hopkins to "bring a damages action against DKP pursuant to 15 U.S.C. §§ 6307e(e)[4] and 6309(d)." (DKP Mem. at 14-15.) There is no question that the Ali Act provides a fighter like Hopkins with the right to bring a federal

---

[4] Because Section 6307e of Title 15 does not contain a subsection (e) and Section 6307b(b) is the provision most relevant to the parties' dispute, the Court assumes that this is a typographical error.

action for damages. Section 6309(d) provides that "any boxer who suffers economic injury as a result of a violation of any provision of this chapter may bring an action in the appropriate Federal or State court and recover the damages suffered . . . ." 15 U.S.C. § 6309(d). Moreover, Hopkins could make, and indeed already has made, the argument that the four, six-month options provided to DKP under the Hakkar Bout Agreement violate Section 6307b(b) of the Ali Act, which prohibits a promoter from requiring a boxer to grant him any future promotional rights as a condition for participating in a mandatory sanctioned bout. See 15 U.S.C. § 6307b(b). However, DKP must do more than establish that Hopkins had the right to file a federal claim and possessed a viable legal argument upon which to base that claim; DKP must show that it instituted its action because of Hopkins' threat of a federal lawsuit.

As a preliminary matter, it is clear that the Hopkins letter was triggered by DKP's communication to GBP four days prior, wherein DKP informed GBP that it intended to exercise its option under the Hakkar Bout Agreement and that any agreement reached between GBP and Hopkins would constitute tortious interference with DKP's rights. Thus, the existence of the options provision in and of itself, agreed to nearly two years earlier by the parties, and whether it runs afoul of the Ali Act, did not cause Hopkins to send this letter.

However, DKP argues that Hopkins' threat for damages under the Ali Act was not based upon the existence of the options provision but upon DKP's "injurious assertion of promotional rights under the Hakkar Bout Agreement." (DKP Mem. at 16.) Assuming *arguendo* that this is a distinction with a difference, the language used within the letter simply does not support DKP's theory. As quoted above, through his counsel, Hopkins characterized DKP's assertion of its rights in this manner as "tortuous" [*sic*]. While this language could be more precise, it does not reflect an intent to file an action alleging the violation of a federal statute. Moreover, although

14

the letter stated that Section 6307 of the Ali Act rendered DKP's options void, it never mentioned Section 6309(d), which provides a private right of action for damages under the Ali Act. In addition, the threat to sue was made in the paragraph following the reference to the Ali Act, in which DKP's conduct was described as "intentional interference." Finally, in the concluding paragraph of the letter, Hopkins recommended that DKP file suit to enforce its purported option rights under the Hakkar Bout Agreement. If Hopkins was in fact threatening suit regarding the enforceability of the options, as DKP contends, it strikes the Court as an odd litigation strategy to first advise one's opponent to file a claim that is essentially the mirror image of your intended claim. Accordingly, based on the plain language of the letter and the surrounding circumstances, the Court finds that, because the focus of the letter was DKP's alleged interference in Hopkins' business affairs, Hopkins threatened to sue DKP under a state-based theory of intentional interference with contract or prospective economic advantage, not the Ali Act.

DKP simply overreaches in claiming that this letter contains the threat of a federal lawsuit. DKP's transparent attempt to bolster its argument by manipulating the order in which two key clauses appeared in the letter may reveal that DKP is aware of the infirmity of its own position. (See DKP Mem. at 15 (quoting the letter and asserting that it threatened "'that Mr. Hopkins will immediately bring suit against you' based upon Hopkins's belief that the Hakkar Bout Agreement's 'options are rendered void by among other things 15 U.S.C.A. Section 6307'"). Moreover, DKP's original complaint made no mention of a threatened action. Only after defendants submitted the present motion did DKP file its First Amended Complaint, which claimed "[b]oth defendants have threatened to sue DKP based upon their erroneous beliefs that the Hakkar Bout Agreement's options provisions are barred under the Ali Act." (Compl. ¶ 56.)

In support of its claim that GBP, as well as Hopkins, threatened to sue under the Ali Act, DKP relies upon a December 15, 2004 letter in which GBP counsel alleged that "Mr. King has engaged in exactly the kind of conduct the [Ali] Act was designed to prevent." (Schalk Aff. Ex. Q.) Aside from the fact that DKP fails to address whether GBP, as a rival promoter, has the right to sue DKP under the Ali Act, the quoted language does not amount to a threat to initiate a lawsuit pursuant to the Ali Act.[5] Furthermore, the first sentence of the letter claims that "Don King and his company have tortiously interfered" with one of GBP's agreements, suggesting that if GBP was contemplating any action, like Hopkins, that action would sound in state tort law, not the Ali Act. Finally, DKP misconstrues the basis of Hopkins' threat in maintaining that a finding of no subject matter jurisdiction would eviscerate the goal of providing federal relief to a boxer forced to surrender future promotional rights as a condition to participating in a mandatory bout. (See DKP Mem. at 16-17.) DKP's argument assumes that Hopkins' threatened claim arose under the Ali Act. As discussed above, Hopkins' focus was state tort claims, not Ali Act claims, and thus, a finding here that subject matter jurisdiction is lacking is consistent with the well-pleaded complaint rule and will not discourage boxers from seeking federal relief under the Ali Act.

Therefore, a reasonable interpretation of Mr. Joseph's letter, considered within the larger context of the case, suggests that DKP's petition for declaratory judgment resembles an opening round uppercut more than a defensive counterpunch. It is apparent that the purpose of DKP's suit is to recover damages from Hopkins and GBP for their allegedly tortious conduct, not to seek relief from the threat of impending litigation. While Hopkins clearly threatened to bring

---

[5] While GBP filed the California action against DKP, which sought only a declaratory judgment in state court, on the same day that DKP filed the instant action, DKP does not argue in its opposition papers that this constitutes evidence of GBP's intent to file a federal damages action against DKP.

16

suit against DKP if DKP contacted any entities with which Hopkins associated, it appears that the threatened action would have been grounded in state tort law, not the Ali Act.

Accordingly, because any claims threatened by defendants were state tort claims, DKP's first cause of action for declaratory judgment does not confer subject matter jurisdiction upon this Court. Because the Court dismisses DKP's declaratory judgment claim, the Court must also dismiss DKP's remaining state claims.[6] Pursuant to 28 U.S.C. § 1367(a), district courts may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). While the district court may, in its discretion, maintain supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction, see 28 U.S.C. § 1367(c)(3), "it cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction." Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996). Therefore, because the Court does not have original jurisdiction, the Court is precluded from exercising supplemental jurisdiction over DKP's related state law claims. See Nowak, 81 F.3d at 1188; Cushing v. Moore, 970 F.2d 1103, 1106 (2d Cir. 1992).

Furthermore, the dismissal is with prejudice because the Court finds that it would be futile to allow DKP to replead. See Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003); Oneida Indian Nation of New York v. City of Sherrill, New York, 337 F.3d 139, 168 (2d Cir. 2003). DKP points to no additional facts regarding the nature of defendants' threatened claims or DKP's instant claims that could cure the jurisdictional defects discussed here. Of course, this does not

---

[6] Because the Court dismisses DKP's claims pursuant to Rule 12(b)(1), the Court need not address Hopkins' Rule 12(b)(6) argument and GBP's Rule 12(b)(2) argument.

leave DKP without a remedy as it may pursue its breach of contract and tortious interference claims in state court.

## CONCLUSION

For the reasons discussed above, defendants' motions to dismiss plaintiff's complaint in its entirety pursuant to Rule 12(b)(1) are GRANTED with prejudice. Moreover, plaintiff's motion for attachment currently pending before the Court is rendered moot, and is therefore dismissed.

**SO ORDERED.**

New York, New York
May 4, 2005

_____
U.S.D.J.

Copies of this Opinion and Order have been sent to:

Peter B. Schalk, Esq.
Judd Burstein, P.C.
1790 Broadway
New York, New York 10019

Katherine L. Pringle, Esq.
Friedman Kaplan Seiler & Adelman LLP
1633 Broadway
New York, New York 10019

Michael S. Olin, Esq.
Podhurst Orseck, P.A.
25 West Flagler Street, Suite 800
Miami, Florida 33130

Steven M. Hayes, Esq.
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, New York 10036